Scott Tillett, Plaintiff & Appellant Good morning, Your Honors. Scott Tillett for Plaintiff & Appellant Krista Robles. I'm going to keep track of my time, but I'm going to try and reserve two minutes. I'd like to talk about three issues today. The first are two threshold issues. One is whether or not the allegations in the complaint referred only to all germs in the universe as opposed to merely known germs. The second is whether or not the allegations in the complaint referred to germs on the hands or all germs generally. And the third is whether or not the back label conflicts with the front label by qualifying that we're not talking about 99.99 percent of germs, but we're talking about a limited set of most germs and then a further limited set of most common germs, 99 percent of most common germs, is what the back label says. Both the demonstrable falsity created by the most qualifier and ambiguity created by the common qualifier preclude dismissal at 12B6 stage. So first I'd like to get the known conundrum out of the way. So the trial court held that it was unreasonable for the plaintiff to allege that the product would kill all germs, even those germs that were unknown. And I think the trial court just ignored paragraph 31 of the complaint, which states that plaintiff relied on this statement when purchasing the product and believed that this statement meant that a scientific study proved that Purell would kill more than 99 percent of all known germs. So it's right there in the complaint in black and white. And that doesn't conflict with the former statement that it would kill all germs, even those not yet known. The front label says that the product kills 99.99 percent of germs. It's unqualified. And so to prove that this is a fantastic and false claim, the plaintiff alleged, well, how could the product possibly kill germs that aren't known? It doesn't kill germs that aren't known. She also played that it doesn't kill germs that are known. Those are not mutually exclusive. If it doesn't kill known germs, then it can't be true that it kills all germs, even those that are unknown. And that same ignoring of paragraph 31 and the known statement, it infected the judge's ruling on finding that there was no standing to seek injunctive relief because the judge said, well, now that the plaintiff knows that the product can't reasonably be presumed to kill unknown germs, then the plaintiff can't possibly expect that Gojo would go back and therefore the plaintiff can't be duped in the future. However, again, this just ignores that the plaintiff pled that she understood that the product killed known germs. This brings me to the second point, germs on the hands. When construing the label, which just says that the product kills 99.99 percent of germs, no qualifiers on the front, the court said, oh, well, obviously since it's a hand sanitizer, we're talking about germs on the hands. The defendant's opposition brief says, well, common sense and context tell us that obviously we're talking about germs on the hands. Well, the court gave that additional information, just read that label in light most favorably to the defendant, even though there was no requirement to do so. But then when looking at the complaint, which says hand sanitizer, hand sanitizer, hand hand sanitizer on the back page, in the light of 12b-6, which does require the court to review those allegations in the light most favorable to the plaintiff, the court did not give the plaintiff that same courtesy. The law required it to do so, to not do so was error. That brings me to my third point. Unlike most cases, where there's a fantastic claim on the front of the label, and then there is a claim on the back of the label, which tries to take that away and somehow explain it, and therefore the plaintiff is running from the back label, here at the 12b-6 stage, I think it's important to look at the back label, because the front label again says kills 99.99% of germs. Then the back label says kills 99.99% of most common germs. What does the word most mean? It means more than... I think it says most common germs that may cause illness, right? Correct, Your Honor. But I just want to parse that phrase, and just, what does most mean? It means more than 50%. So if it meant 60%, if it meant 70%, if it meant 80%, each one of those interpretations, and that's not counting decimals or any of the other possible interpretations between 50% and 100% that it could have meant, all of which are plausible and reasonable, any one of those necessarily conflicts with the front label, which says that it kills 99.99% of germs. And if there's two possible plausible interpretations, here I would argue there's many, many, many possible plausible interpretations, but where there's only two, and one of them renders the product not false advertising, the other renders it false advertising, you're supposed to... The law says, Bell v. Public says you're supposed to not dismiss the claim, that you're supposed to let it go forward past the 12b-6 stage to see how a reasonable consumer would interpret that claim. The next qualifier is common. What are common germs? I have no idea. Common is completely ambiguous, right? So it's not just most germs, but it's 99.99% of most common germs. And so, doubtless, if this case were to go past the 12b-6 stage, plaintiffs would hire experts or do surveys to determine what common germs are, they'd come up with a list. Defendants would hire experts, they would come up with a list, they would take surveys. Those two lists would vary. And then we'd have a trier of facts that would resolve the factual dispute of which list we're talking about, which list of common germs. Well, here, we haven't gotten to that stage, we're only at 12b-6, but more importantly, this ambiguity renders 12b-6... It should not have been granted. Here's the difficulty I have with that strain of argument, is if the label defines its effectiveness based on a specific population of germs, universe of germs, why is it that a reasonable consumer could read it to be effective against a larger universe of germs? Because the statements on the back label, where there's the asterisks that lead you there, those are the universe of possible germs that this thing is going to work against. So why can a reasonable consumer just think, well, I don't fully understand what that smaller universe is, and so I'm going to think that it's a bigger universe of germs. I guess the part that I take issue with with your question, and forgive me for phrasing it that way, but is that it closes the universe. I think that the back label is completely and hopelessly ambiguous, and it doesn't close, it opens the universe. It certainly is attempting to give some limitation. To the extent, if we take the front label and say that could be 99.99% of all germs everywhere exist, don't exist, we don't know them, whatever, it's the whole broad universe. We take the comments on the back label, whatever it means, it's some sort of narrowing. And what I don't understand about your argument is that it seems like you're saying that a narrowing is, they can still think that the broad statement on the front is really what is going on here. I guess my argument is that a reasonable consumer would have no idea what the narrowing is, because I have no idea what the narrowing is. A reasonable consumer, wouldn't they know that there's some narrowing happening with the language of most in common, and I mean, that's limiting language. If they turn to the back label, then they would, I imagine, I would, I would say, okay, there's some attempt to narrow, but I have no idea how, and to what degree. And so there's necessarily an ambiguity in how they narrow it. And so this is, remember, this is a medical product that's supposed to kill germs found in a pharmacy or a store that has a pharmacy. All kinds of stores carry Purell, CVS, Rite Aid. And so a reasonable consumer would think, oh, well, there's a claim, 99.9% of germs. Well, that claim has probably been tested, it's probably true. I know it's probably true because it's to a 0.99% decibel, it's 99.99% of germs. And then we go to the back. Oh, we're only talking about most common germs. Well, what, what most or common germs are we possibly talking about? I understand you're making an ambiguity point, but is there anywhere in this record that indicates that you are claiming the back label is false? Absolutely, I mean, there's, there's all over the complaint that claims that the label is  It claims that the front label is false and it claims that the back label is false. Can you give me a specific site? Give me a... If you want to reserve time and do it on rebuttal, that's fine. Thank you. I will. I have the same question. And just to clarify, my focus on that last question is really an allegation in the complaint that claims the 99.9% of common germs, not the front 99% killing of germs known or unknown in the universe. Yes, sir. Good afternoon, Your Honors. May it please the Court, Phil Olis for Appellee Gojo Industries, Inc. I'd like to first just make the broad point that this court has instructed district courts time and time again that in assessing claims like this, it is to look to context, to common of the product. District court judges are not potted plants. In time and time again, when they have addressed these types of allegations, they've come to the same conclusion, that any reasonable consumer would presume that the product is for use on the hands. And the representation on the label with respect to the kill rate relates to germs that commonly appear on the hands. Now, my friend's arguments are really at war with the actual allegations in the complaint. He says that the complaint refers to hands repeatedly. The only place you'll find references to hands in the complaint is in the name of the product, which is, we submit, sort of the point. There are no allegations in this complaint that consumers, reasonable consumers, believe the 99.99% kill rate claim is specific to the hands. It is this broader argument that the representation or the label claim kills 99.99% of germs leads directly, this is from paragraph 66 and many places in the complaint, leads directly to the conclusion that it has been scientifically proven that the product kills more than 99.99% of germs or illness-causing germs, while it has, in fact, been tested on miniscule percentage of germs and has not been proven to effectively kill many common harmful germs, and goes on to say, looking at paragraph 67, there is estimated to be somewhere between 100 billion and 1 trillion different microbial species on earth. The current catalog species stands around 10.7, which leaves about 5 logs yet to be discovered and identified. In other words, 99.999% of germs are yet to be discovered and identified. Therefore, no scientific study can support the claim kills more than 99.99% of germs or that the product kills more than 99.99% of illness-causing germs, nor could it, because Go-Gez Purell product has not been tested on 100 billion to 1 trillion germs. That is the theory in this case. That is the allegation that is repeated time and time. It's repeated not only in the introduction and the part I just read, but also under the different counts, the FAL and the UCL counts. So there's no allegation here that is limited to the hands, and that's the fundamental defect with this case. Any reasonable consumer would understand hand sanitizer to be used on the hands in representations with respect to the effective kill rate to be related to hands. And even if they didn't, this court has instructed district court judges to look at the contextual circumstances, to look at the label. And most recently in the McGinnity case, to look at the back label. And as we heard earlier today, there's an asterisk that leads to the back label, and as was just discussed, that refers to most common germs, most common illness-causing germs. There's nothing ambiguous about that. There's certainly nothing misleading about that. Counsel says, well, I don't know what that means. Well, not knowing exactly what it means is not the same thing as it being misleading. What it does is it makes clear that the 99.99% claim is not 99.99% of germs discovered or undiscovered, known or unknown, ever to be found in the future. Is there an allegation that the back label clarification is false? No. There is not. The allegation, in fact, is that contrary to what counsel just said, that the back label is consistent with the front label. So you said, I believe that it's in conflict, and when the back label is in conflict, it can't take away the false representation on the front. That is not the position that plaintiff has taken in the pleadings. Similarly, with respect to ambiguity, what they've alleged in the reply brief, or what they've said, is that the front label is ambiguous, that it is ambiguous and that manufacturers take advantage of ambiguity to have some sort of plausible deniability. We're going to put an ambiguous claim out there, and then we're going to say, well, it doesn't mean what you think it means. In those circumstances where the front label is ambiguous, that's exactly what McGinnity tells us. That's when you look to the back label. That's when you expect the customer to look to the back label. Ambiguity, the notion that ambiguity must be resolved in front of the plaintiff, may have some surface level appeal, but what it doesn't, ambiguity does not make the claim misleading. It may make it unclear, but it doesn't mislead the consumer into making a purchase. What the plaintiffs need to allege is that they were misled, that they have a plausible theory that reasonable consumers would understand the meaning of the label to be something that is not true. If we agree with the district court's analysis on this complaint, I take it that your position would be that there should be no further leave to amend. The district court did actually grant leave to amend in this case, if I recall correctly, and the plaintiff chose to stand on the complaint. Correct. I mean, if there is a better example of waiver, I don't know what it would be. So there are two waivers here. There's the waiver where they were given leave to amend and then affirmatively put the court on notice, filed a notice to the court that they were not going to amend. They were going to stand on the complaint, ask for judgment to be entered against them so they could take it up to this court, and then in their appellant brief, did not seek that relief. Those are two distinct waivers, and they are complete. So there's no reason to remand this case, to take the position that they're going to live or die on what is in the complaint, and what is in the complaint is this notion that has been rejected time and time again and is completely inconsistent with any plausible interpretation of the label that it kills 99.99% of all germs known or unknown. With my remaining time, I'd like to raise another issue, and that is the question of standing. So Judge Selna Below dismissed the case for lack of standing to seek conjunctive relief. He denied our motion to dismiss for the absence of standing altogether. We think he was right in the first instance and incorrect in the second. This is a case where there is no economic injury alleged by the plaintiff. We see allegations, and this case was originally dismissed for lack of standing because there was no injury alleged. They attempted to fix that, Judge Selna agreed that they had, by alleging that there are other products, quite unlike this product, that cost less per ounce than Purell. And we submit to you that those products, too, which are soaps, so they're in the same category of products, do not demonstrate plausible factual allegations or do not constitute plausible factual allegations that would support an economic injury. There are no allegations here that this consumer or any consumer paid more on account of this label claim than they would have in the absence of this label claim. And with respect to injunctive relief, I just want to note that based on the theory that I just talked to you about, and this direct allegation that it is impossible to substantiate the claim, 99.99%, given the billions of undiscovered germs that may be out there, that there is no injunctive relief. There's no meaningful relief that would come from an injunction for this particular plaintiff. She says that she can't rely on the label, but she can't rely on the label because she believes it is impossible. It can never be true. In that instance, she can't be fooled in the future. And so for that reason, injunctive relief is inappropriate here because she lacked standing to seek it. She can't be harmed by the label in the future. So with that, unless the panel has any more questions, I thank you and ask that the Order of the District Court be affirmed. Thank you. All right. Thank you very much, Counsel. Thank you, Your Honors. Just really quickly, I looked back at the complaint, paragraphs 97, 98, and 99 at ER040-041, discussed the back label. Just to respond to a couple of statements that opposing counsel made, the complaint does say consistently, consistent, that the front label was consistent with the back. It's consistent in terms of its falsity with respect to the 99.99% claim. With respect to the injunctive relief argument that counsel just made, counsel, like the court, just skipped over the allegations about the plaintiff that the plaintiff said that it didn't work against known germs. And then in terms of if this court is inclined to reverse, it should do so with instructions to grant the plaintiff leave to amend. And in this case, the Moreno Ninth Circuit — in Moreno, Moreno was pending, and the Ninth Circuit was going to be — You were granted leave to amend, and you declined that invitation. We asked the court to stay in light of Moreno, which was going to be considering these same issues, and the court said no. And then we were left with no choice but to come to the Ninth Circuit to have the Ninth Circuit address these same issues. And the opposition brief states that at page 12-13, counsel's opposition brief, in this court's decision in Moreno. With that, I submit. All right. Thank you very much, counsel, for both sides for your arguments today. The matter is submitted, and that concludes our argument calendar for this morning. We're in recess until tomorrow. All rise.
judges: NGUYEN, FORREST, Bennett